IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALEXANDER HORELL, an individual;
GORDON D. BROWN, an individual;
HATEM M. HASSAN, an individual §
§
*Plaintiff*, § CIVIL NO <u>2:22-cv-787</u>
§
§
§ JURY TRIAL DEMANDED
v. §
§
THE CITY OF PITTSBURGH POLICE §
DEPARTMENT, POLICE OFFICER SEAN §
STUMPF; SGT. PHIL LERZA; POLICE OFFICER §
RYAN MCDONALD; POLICE OFFICER AARON§
CONNER; POLICE OFFICER SHANE §
KOVACH; DETECTIVE MICHAEL MARES §
LT. PHILLIP P. MERCURIO, JR.; §
WENDELL HISSRICH, DIRECTOR OF THE CITY§
OF PITTSBURGH DEPT. OF PUBLIC SAFETY §
SCOTT SCHUBERT, CHIEF OF THE CITY OF
PITTSBURGH BUREAU OF POLICE

*Defendants*.

## COMPLAINT

AND NOW COMES the Plaintiffs, Alexander Horell, Gordon D. Brown, and Hatem M.

Hassan, by and through his Attorneys Fred G. Rabner, Esquire, Ashley M. Cagle, Esquire, Monte

J. Rabner, and Rabner Law Offices, P.C. and respectfully avers the following:

**I.**

## INTRODUCTION

On or about May 25, 2020, George Floyd, an unarmed African American male was

murdered by members of the Minneapolis, MN police department. As a result, large-scale,

1

sustained peaceful demonstrations were held across the country and the world protesting the discriminatory treatment that people of color experienced by members of law enforcement. Pittsburgh witnessed multiple protests of its own, with multiple congregations of citizens forming across the city demonstrating against police brutality, advocating for community policing and peace. The pot of racial tension proverbially boiled over on May 30, 2020 when thousands of citizens marched throughout the downtown Pittsburgh area.  Plaintiffs named herein eventually found themselves in separate spots within the general area of Smithfield Street and 5th Avenue in downtown Pittsburgh. Despite the nonviolent nature of these demonstrations, Pittsburgh Bureau of Police converged into the area, taking tactical stances, and arresting those protestors who they encountered.   At some point, individuals who were not participating in the protests seized an opportunity, created chaos, and began to loot local businesses – causing significant damage to property throughout downtown Pittsburgh. The once peaceful protests turned violent, with individuals setting fire to police cars, damaging local businesses, and engaging in other forms of civil disruption.

Unfortunately, bad actors had caused similar outcomes in cities across the country, where they use the peaceful demonstrations to participate in destructive, even criminal activities. As such, the Pittsburgh Police Department was on notice of the likelihood of protests being infiltrated by individuals who were intent on reaping havoc through committing acts of violence during these peaceful protests as the same had occurred throughout other areas in the country, including Minneapolis, Washington D.C., and the rest of the fifty states. Pittsburgh Bureau of Police did nothing to adequately prepare for crowd control or protests despite the fact that they had been occurring in cities across the country in the days following the George Floyd killing.

Rather than dispelling those who were disrupting the peaceful marches and protests which were being held in the City of Pittsburgh on May 30, 2020, the Pittsburgh Bureau of Police indiscriminately fired propulsions at targeted individuals in the crowd, used chemical gas, and failed to provide medical attention to the many who were injured by their "crowd control" tactics. The Plaintiffs, Alexander Horell, Gordon Brown, and Hatem Hassan were downtown when the police began to fire into the crowd, harkening back to the Kent State massacre, except when Plaintiff Horell was hit by a projectile, thankfully he was not murdered – he lost his right eye;  Plaintiff Gordon Brown was shot with a projectile in the face, causing a full thickness laceration to his upper lip and tooth loss; Plaintiff Hatem Hassan sustained a displaced fracture to his hand when members of the Pittsburgh Police Department cornered him and others in an alley and fired rubber bullets, chemical gas, and other propulsions at the trapped individuals.

This lawsuit contends that the named Defendants violated the Plaintiffs named herein First Amendment rights to freedom of speech and assembly, their Fourth Amendment right to be free from excessive force and false arrest and their Fourteenth Amendment right to be free from official governmental policies which violate his constitutional rights.

## II.

## PARTIES

1.    Plaintiff Alexander Horell, hereinafter referred to as "Horell," is a person of the full age of majority and a resident of Pittsburgh, Pennsylvania, in Allegheny County.

2.     Plaintiff Gordon D. Brown, hereinafter referred to as "Brown," is a person of full age of majority and a resident of Pittsburgh, Pennsylvania in Allegheny County.

3

3.      Plaintiff Hatem M. Hassan, hereinafter referred to as "Hassan," is a person of full age of majority and a resident of Pittsburgh, Pennsylvania in Allegheny County.

4.      Defendant City of Pittsburgh is a municipality within the Commonwealth of Pennsylvania with a principal place of business located at 414 Grant Street, Pittsburgh, Pennsylvania 15219. At all times relevant hereto, this Defendant was authorized to, and did operate and maintain, the Pittsburgh Bureau of Police ("PBP"). At all times relevant hereto, this Defendant acted by and through its duly authorized agents, employees, and/or assigns, who were then and there acting within the course and scope of their employment, under the color of state law and in accordance with the customs, policies, and practices of the City of Pittsburgh.

5.      Defendant Wendell Hissrich is the Director of the City of Pittsburgh Department of Public Safety (hereinafter referred to as "Hissrich"). Hissrich is the chief policymaker for the City of Pittsburgh Department of Public Safety. At all times relevant, Hissrich ordered, authorized, participated in, and/or acquiesced in the violations of Plaintiff's rights as alleged herein. At all times material hereto, Hissrich was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Hissrich is named in both his official and individual capacities.

6.      Defendant Scott Schubert is the Chief of the Pittsburgh Bureau of Police (hereinafter referred to as "Schubert").   At all times relevant, Schubert was a policymaker of Defendant City of Pittsburgh. At all times relevant, Schubert ordered, authorized, participated in, and/or acquiesced in the violations of Plaintiff's rights as alleged herein. At all times relevant hereto, Schubert was acting under color of state law, within the course and scope of his official

duties in accordance with the customs and/or policies of the City of Pittsburgh. Schubert is named in both his official and individual capacities.

7.      Defendant Phil Lerza is the Sergeant of the Special Response Team (SRT) of the Pittsburgh Bureau of Police (hereinafter referred to as "Lerza"). At all times material hereto, Lerza ordered, authorized, participated in, and/or acquiesced in the violations of Plaintiff's rights as alleged herein. At all times material hereto, Lerza was acting under color of state law, within the scope of his official duties, and in accordance with the customs and/or policies of the City of Pittsburgh. Lerza is named in his individual capacity.

8.      Defendant Phillip Mercurio is a Lieutenant with the City of Pittsburgh Bureau of Police (hereinafter referred to as "Mercurio"). At all times material, Mercurio ordered, authorized, participated in, and/or acquiesced in the violation of Plaintiff's rights as alleged herein. At all times material hereto, Mercurio was acting under color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Mercurio is sued in his individual capacity.

9.      Defendant Michael Mares is a Detective with the City of Pittsburgh Bureau of Police (hereinafter referred to as "Mares"). At all times material, Mares ordered, authorized, participated in, and/or acquiesced in the violation of Plaintiff's rights as alleged herein. At all times material hereto, Mares was acting under the color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Mares is sued in his individual capacity.

10.     Defendant Sean Stumpf is a police officer with the City of Pittsburgh Bureau of Police (hereinafter referred to as "Stumpf"). At all times material, Stumpf ordered, authorized,

participated in, and/or acquiesced in the violation of Plaintiff's rights as alleged herein. At all times material hereto, Mares was acting under the color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. Stumpf is sued in his individual capacity.

11.     Defendant Ryan McDonald is a police officer with the City of Pittsburgh Bureau of Police (hereinafter referred to as "McDonald"). At all times relevant hereto, McDonald was part of the Special Response Team (SRT) and ordered, authorized, participated in, and/or acquiesced in the violation of Plaintiff's rights as alleged herein. At all times material hereto, McDonald was acting under the color of state law, within the course and scope of his official duties and in accordance with the customs and/or policies of the City of Pittsburgh. McDonald is sued in his individual capacity.

12.     Defendant Aaron Conner is a police officer with the City of Pittsburgh Bureau of Police (hereinafter referred to as "Conner"). At all times material herein, Conner was part of the Special Response Team (SRT) and ordered, authorized, participated in, and/or acquiesced in the violation of Plaintiff's rights as alleged herein. At all times material hereto, Conner was acting under the color of state law, within the course and scope of his official duties, and in accordance with the customs and/or policies of the City of Pittsburgh. Conner is sued in his individual capacity.

13.     Defendant Shane Kovach is a police officer with the City of Pittsburgh Bureau of Police (hereinafter referred to as "Kovach"). At all times material herein, Kovach was part of the Special Response Team (SRT) and ordered, authorized, participated in, and/or acquiesced in the violation of Plaintiff's rights as alleged herein. At all times material hereto, Kovach was acting

6

under color of state law, within the course and scope of his official duties, and in accordance with the customs and/or policies of the City of Pittsburgh. Kovach is sued in his individual capacity.

## III.

## JURISDICTION AND VENUE

14.     Jurisdiction exists in this court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought under, inter alia, the Fourth Amendment of the United States Constitution and 42 U.S.C. §1983, to redress the deprivation of rights, privileges and immunities guaranteed to decedent to the Plaintiffs Horell, Brown, and Hassan, by constitutional and statutory provisions. Plaintiffs further invokes the supplemental jurisdiction of this court pursuant to 28 U.S.C. § 1367 to adjudicate pendent claims arising under the laws of the State of Pittsburgh.

15.     Venue is proper in this court because the causes of action occurred within the Western District of Pennsylvania.

## IV.

## FACTS COMMON TO ALL PARTIES

16.     On or about May 30, 2020, in response to various instances of police brutality against people of color, thousands of individuals participated in non-violent protestors throughout the city of Pittsburgh. Unfortunately, some of the non-violent gatherings turned more disruptive, eventually causing two police vehicles to be burned.

17.   The Plaintiffs named herein were participating in the peaceful protests that were being held in downtown Pittsburgh. These protests were comprised of citizens marching, chanting "No Justice, No Peace," and displaying signs calling for police reform.

18.   The majority of individuals, including the Plaintiffs named herein, did not participate in acts of violence or damage property.

19.   Once the PBP began to receive reports of property damage, they immediately discharged members of the SRT team including Defendants Mares, McDonald, Conner, and Kovach, lead by Sergeant Lerza, SWAT members, as well as officers from the surrounding areas responded to the area of Smithfield Street and Fifth Avenue and Smithfield Street and 6th Avenue.

20.    Members of the SRT team indiscriminately used chemical gas, rubber bullets, other projectiles, pepper spray, flashbang grenades, as well as other riot control devices against all individuals they encountered – whether they were peacefully congregating or not.

21.   A flashbang grenade is an explosive device designed to frighten and disorient an enemy through a blinding flash of light and extremely loud explosive noise. Rubber bullets, as used herein, refers to 12-gauge super soc rounds made out of Kevlar material containing led pellets. Beanbag rounds are cloth bags filled with led shot which are fired from a 12-gauge shotgun. Sponge grenades are large plastic or metal bullets with dense, foam, rubber tips. They are typically fired from a 40 mm grenade launcher.

22.   Although the aforementioned items are often referred to as "less lethal" munitions, they are fired with the force of a gun or grenade launcher and have the capability to cause significant injury and/or death, particularly when fired from close distance and/or to vulnerable areas of the body.

8

23.     As the PBP officers advanced toward protestors, they knowingly and intentionally shot at peaceful protestors from point blank range, sometimes even pointing out their targets before firing.

24.     Multiple video recordings of the scene depict a line of officers advancing on three individuals – two men and one woman. As the protestors slowly backed away from the law enforcement line, a SWAT officer shot a female protestor in the chest with an unknown munition from a distance of approximately ten (10) feet.

25.     Plaintiff Horell was shot in the right eye by a rubber bullet or other munition after SRT officers pointed their guns into the crowd, pointed out individuals to target, and fired the projectiles in at the head and chest of their targets. That's how Plaintiff Brown lost two teeth – he was shot in the face by an SRT officer. Most alarming, the SRT officers and others from the PBP who were at the scene were even targeting individuals who were fleeing the scene, which at this point, resembled a war zone in Baghdad rather than downtown Pittsburgh due to the screams for help of injured citizens, smoke blanketed the area from the chemical gas, and all the while, officers continued to fire rubber bullets at anyone they encountered. Plaintiff Hassan was trying to get away from the chaos but was forced into an alley by the police line where he was met with SRT and SWAT officers who fired into the crowd at close range, breaking his hand and injuring portions of his back.

26.     It is believed and therefore averred that the PBP officers present prevented or delayed EMTs from entering the area and providing medical treatment to the injured protestors.

27.     The Pittsburgh Police Department arrested forty-six (46) individuals at the protests due to their alleged failure to disperse. The Allegheny County District Attorney's Office opted not to prosecute thirty-nine (39) of the forty-six (46) arrestees.

28.     On or about June 6, 2020, Detective Mares debriefed the SRT officers who were present during the demonstrations which occurred on or about May 30, 2020.

29.     Defendant Lerza claimed that at or about 1830 hours, he was on a "skirmish line" at the intersection of Smithfield Street and 5th Avenue. Defendant Lerza alleged that as he was holding the line, an unknown person threw a wine bottle, striking Lerza in the knee. At the same time, Defendant Conner claimed he was also struck in the left foot with a wine bottle.

30.     On or about June 14, 2020, Defendant Stumpf was investigating the "riot" which occurred on May 30, 2020. To do so, Defendant Stumpf pulled the city camera footage from the aforementioned intersections. A male later identified as Plaintiff Horell was identified as being "heavily involved in the riot." Stumpf alleged that he observed Plaintiff Horell engage in the following activities:

        a.  Attempted to use garbage cans to catch smoke and OC vapor canisters used by the Pittsburgh SRT officers to disburse the rioting crowd;

        b.  Turned the can upside down causing rubbish to fall to the ground;

        c.  Failed to clean up garbage; and

        d.  Taunted police officers.

31.     Independent witnesses who observed the events that occurred on May 30, 2020, however, observed the SRT officers poised, targeting protestors in the crowd, aiming their rubber bullet gun at their targets, lining up the sights down the barrel and firing at individuals who they

were picking off within the congregation of people.

32.     Plaintiff Horell, who was positioned a significant distance from the SRT line was not observed by independent witnesses to engage in a threatening stance, throw items at law enforcement, or engage in any of the activity Defendant Stumpf allegedly observed. Despite this, one of the SRT officers pointed his gun in the direction of Plaintiff Horell, looked down the barrel of the gun to ensure that the target would be struck, and fired rubber bullets directly into the face and neck area of Plaintiff Horell. Such action, that of targeting the head, neck, or other sensitive areas, is directly against the Pittsburgh Bureau of Police General Order 12-07, which specifically prohibits such action.

33.     Plaintiff Horell was ushered from the line of fire by a nearby Good Samaritan. By this time, Plaintiff Horell face was covered with blood which was flowing with copious amounts from his eye. At no time did any of the SRT officers of any other Pittsburgh Police Officer attempt to provide medical aid and/or treatment to the named Plaintiffs herein. This failure to render aid is also a direct violation of Pittsburgh General Orders requiring the same.

34.     The Defendants falsely accused Plaintiff Horell, Brown, and others of misconduct and wrongdoing in an effort to mitigate their gross mishandling of the protestors who gathered in Downton Pittsburgh.

35.     Plaintiffs Horell and Brown are criminally charged in an effort to minimize the level of culpability applied to PBP and its response to the protests which occurred on May 30, 2020. In fact, Plaintiff Horell's charges were only filed after receiving a letter of representation from undersigned counsel. Such action we contend is further retaliatory in nature.

36.     At Plaintiff Horell's preliminary hearing held related to the false charges PBP lodged, he was harassed by Defendant Stumpf, who made an allegation to Allegheny County Sheriffs that Plaintiff Horell was illegally photographing the courtroom. As a result of Defendant Stumpf's false statement, Plaintiff Horell was taken into custody, infuriating the sitting magistrate, Mike Pappas. The Plaintiff was later taken into official custody by the Allegheny County Sheriff who later released him when it was determined that Defendant Stumpf's alleged observations were false.

37.     Worse yet, the named Defendants further attempted to minimize the level of force PBP used by falsely claiming to the media that:

a.      the only force PBP used was smoke;

b.      the PBP did not use chemical gas;

c.      the PBP did **not** use rubber bullets; and

d.      no protestors were seriously injured by the PBP use of force;

38.     Plaintiffs would show that at all times material hereto, the Defendants were acting under the color of law when they aimed and shot propulsions into the crowd.

39.     Moreover, no reasonably competent official would have concluded that the actions of named Defendants described herein would not violate Plaintiffs' constitutional rights. In other words, no reasonably prudent police officer under similar circumstances could have believed that the Defendants' conduct was justified, nor was the treatment of the named Plaintiffs, reasonable.

40.     PBP has a policy prohibiting officers from intentionally targeting at the head, neck, throat, chest, or genital area, unless deadly force is justified. There is no indication that

PBP claimed to require the use of deadly force, as a result, officers are required to direct the beanbag round toward the following areas:

> Lower abdomen, at belt level;
>
> Buttocks;
>
> Arms above and below the elbow;
>
> Thigh area;
>
> Legs below the knee.

See Pittsburgh Bureau of Police General Order 12-07 section 11.3 1-2.

41.     Despite this policy, all named Plaintiffs were injured in areas that officers are PROHIBITED from injuring.

42.     PBP's policy regarding discharging less than deadly force does not permit discharge from close range, directing officers to use cover and distance to ensure officer safety. Nevertheless, the SRT officers on scene discharged rounds into the crowd less than twenty feet from the protestors such as the Plaintiffs.

43.     Where deadly force is not justified, PBP's policy regarding discharge of less lethal munitions does not provide for the use of rubber bullets, sponge grenades, or the like. Nevertheless, PBP officers shot protestors like the Plaintiffs with rubber bullets and sponge grenades.

44.     PBP's policy regarding discharge of less lethal munitions does not permit discharge from less than 20 feet. Nevertheless, discharged rubber bullets, beanbags, and/or sponge grenades at protestors such as the Plaintiffs from a distance of far less than 20 feet.

13

45.     PBP recognizes that "[t]he use of kinetic energy impact projectiles are considered deadly force, if it intentionally deployed to area of the subjects [sic] body that are recognized as likely to cause seriously bodily injury or death (head, neck, throat, chest or solar plexus)." PBP policy prohibits officers from targeting these areas of a person's body unless deadly force is justified. Nevertheless, PBP officer fired hundreds of rubber bullets, beanbags, and/or sponge grenades indiscriminately and recklessly into clouds of smoke, as well as with pointed, poised aim into the crowd of protestors causing them to be hit with projectiles in the areas of their bodies likely to cause serious bodily injury and were in fact, seriously injured.

46.     PBP policy requires officers to transport persons subjected to kinetic energy impact projectiles to a medical facility for evaluation and treatments. PBP did not transport Protestors, such as the Plaintiff, to a medical facility or render any medical aid whatsoever, even though an ambulance accompanied police vehicles who converged on the scene. PBP did not re-arrange for medical care or transportation for injured protesters, even though it intended to use levels of force which were likely to cause serious injury or death to protestors.

47.     PBP's failure to follow its own policy regarding discharge of less lethal munitions constituted deliberate indifference to the rights of Plaintiffs.

48.     PBP does not have a policy related to declaring assemblies as "unlawful" and the forced dispersal of protests, even though the need for such a policy is obvious.

49.     PBP does not have a policy governing the use of chemical gas, flashbang grenades, and/or smoke bombs even though the need for such policy is obvious.

50.     PBP's failure to procure, ratify, and adopt these policies constitutes deliberate indifference to the constitutional rights of individuals such as the Plaintiffs as they peacefully protested.

51.     Defendants' unlawful and unwarranted acts, lack of training, and the official

14

customs or practices of the PBP caused Plaintiffs' injuries.  As a direct and proximate result of the Defendants' conduct, the Plaintiffs have sustained substantial damages and pecuniary loss.

52.     PBP's use of force training curriculum does not address, or in the alternative, does not sufficiently address, crowd/riot control techniques, use of impact munitions, chemical gas, flashbang grenades and/or smoke bombs.

53.     PBP does not train, or does not adequately train, officers in crowd/riot control techniques.

54.     PBP does not train, or does not adequately train, officers in the sue of munitions such as rubber bullets, bean bag rounds, and/or sponge grenades.

55.     PBP does not train or does not adequately train officers in the use of chemicals, such as tear gas and/or OC spray for crowd control purposes.

56.     PBP does not train, or does not adequately train, officers in the use of flashbang devices and/or smoke bombs for crowd control purposes.

57.     PBP's failure to train its officers, as hereinafter set forth, constitutes deliberate indifference to the rights of Plaintiffs and other peaceful protesters with whom PBP officers come into contact.

58.     As a direct and proximate result of PBP's actions, Plaintiffs Horell, Hassan, and Brown have suffered physical and emotional injuries.

## V. CAUSES OF ACTION

A.     *COUNT I- VIOLATION OF FIRST AMENDMENT OF THE UNITED STATES*
       *CONSTITUTION*

       *Plaintiffs Horell, Brown, and Hassan v. Individual Defendants*

59.    Plaintiffs incorporate by reference paragraphs 1 through 58 as if fully set forth
herein.

60.    Defendants' actions, as previously mentioned, violated Plaintiffs First
Amendment Right to Freedom of Speech, Freedom to Peaceably Assemble and Freedom to
petition the government for redress of grievances.

61.    Defendants' actions were not reasonable regulations of the time, place, or manner
of Plaintiffs' speech.

62.    Defendants' actions had the purpose and effect of suppressing Plaintiffs' speech
and dissuading Plaintiffs and others from engaging in future activities protected by the First
Amendment

63.    Defendants' actions would reasonably be expected to deter a reasonable person
from exercising their First Amendment rights.

64.    As a direct and proximate result of the actions of the Defendants, the named
Plaintiffs, particularly Horell, have been subjected to and may hereafter be subject to great pain,
suffering and inconvenience; Plaintiff Horell was required to undergo and in the future may be
required to undergo extensive therapy for the emotional distress he sustained; he may have
sustained an aggravation of pre-existing injuries or conditions; he has sustained a right orbital
fracture, he has sustained a globe rupture to his right eye, he has underwent a right eye

enucleation, a right lid laceration repair, he suffers from emotional and psychological difficulties; he sustained a loss of earnings and his earning power may have been permanently impaired; he is left with scarring and permanent impairment of his right eye; he sustained other injuries, losses and damages. He has experienced grief, anxiety, depression, and nervousness. He has incurred and may hereafter incur expenditures for medical care, drugs, and kindred expenditures.

65.    As a direct and proximate result of the  actions of the Defendants, the named Plaintiffs, particularly Brown, have been subjected to and may hereafter be subject to great pain, suffering and inconvenience; Plaintiff Brown was required to undergo and in the future may be required to undergo extensive therapy for the emotional distress he sustained; he may have sustained an aggravation of pre-existing injuries or conditions; he underwent an upper lip laceration repair, he suffers from emotional and psychological difficulties; he is left with significant scarring on his upper lip; he lost two teeth; he sustained a loss of earnings and his earning power may have been permanently impaired; he is left with permanent scarring and permanent impairment; he sustained other injuries, losses and damages. He has experienced grief, anxiety, depression, and nervousness. He has incurred and may hereafter incur expenditures for medical care, drugs, and kindred expenditures.

66.    As a direct and proximate result of the  actions of the Defendants, the named Plaintiffs, particularly Hassan, part have been subjected to and may hereafter be subject to great pain, suffering and inconvenience; Plaintiff Hassan was required to undergo and in the future may be required to undergo extensive therapy for the emotional distress he sustained; he may have sustained an aggravation of pre-existing injuries or conditions; he sustained a closed fracture to his hand, was required to undergo significant orthopedic repair; he suffers from

17

emotional and psychological difficulties; he sustained a loss of earnings and his earning power may have been permanently impaired; he is left with scarring and permanent impairment; he sustained other injuries, losses and damages. He has experienced grief, anxiety, depression, and nervousness. He has incurred and may hereafter incur expenditures for medical care, drugs, and kindred expenditures.

67.     The acts of the Defendants, as set forth in this complaint, were done willfully, maliciously and/or with a callous disregard and reckless indifference to and disregard of the rights, immunities and privileges guaranteed to the named Plaintiffs Horell, Brown, and Hassan by the First Amendment to the United States Constitution.

WHEREFORE, Plaintiffs ask for the entrance of judgment against the individual Defendants, individually and jointly, as follows:

        a.     compensatory damages in an amount to be determined by this Court to be just, fair and reasonable;

        b.     punitive damages;

        c.     prejudgment and post judgment interest;

        d.     the costs incurred in the prosecution of this matter;

        e.     reasonable counsel fees; and,

        f.     such other and further relief as the Court deems just and appropriate.

**B.**      ***COUNT II VIOLATION OF THE FIRST AMENDMENT TO THE UNITED STATES***

***CONSTITUTION RETALIATORY PROSECUTION***

***Plaintiffs Horell and Brown v. Individual Defendants***

68.      Plaintiffs Horell and Brown incorporates by reference paragraphs 1 through 67 as

if more fully set forth herein.

69.      Defendants' actions, as outlined above, subjected Plaintiffs Horell and Brown to

malicious prosecution in retaliation for engaging in Constitutionally protected speech in violation

of the First Amendment of the United States Constitution.

70.      As a direct and proximate result of Defendant's conduct as outlined above,

Plaintiffs suffered physical pain and/or emotional and psychological pain and suffering.

WHEREFORE, Plaintiffs ask for the entrance of judgment against the individual

Defendants, individually and jointly, as follows:

    a.      compensatory damages in an amount to be determined by this Court to be

          just, fair and reasonable;

    b.      punitive damages;

    c.      prejudgment and post judgment interest;

    d.      the costs incurred in the prosecution of this matter;

    e.      reasonable counsel fees; and,

    f.      such other and further relief as the Court deems just and

appropriate.

C.   ***COUNT III VIOLATION OF THE FOUTH AMENDMENT TO THE UNITED STATES CONSTITUTION, UNLAWFUL ARREST***

***Plaintiffs Horell and Brown v. Individual Defendants***

71.   Plaintiffs incorporate by referenced paragraphs 1 through 70 as if more fully set forth herein.

72.   Defendants' actions, as outlined above, subjected Plaintiffs Horell and Brown to an unreasonable seizure absent probable cause in violation of the Fourth Amendment of the United States Constitution.

73.   As a direct and proximate result of Defendants' conduct, as outlined above, Plaintiffs Horell and Brown suffered physical injury and/or emotional psychological pain and suffering.

WHEREFORE, Plaintiffs Horell and Brown ask for the entrance of judgment against the individual Defendants, individually and jointly, as follows:

a.   compensatory damages in an amount to be determined by this Court to be just, fair and reasonable;

b.   punitive damages;

c.   prejudgment and post judgment interest;

d.   the costs incurred in the prosecution of this matter;

e.   reasonable counsel fees; and,

f.   such other and further relief as the Court deems just and appropriate.

**D**.     ***COUNT IV VIOLATION OF THE FIRST AND/OR FOURTEENTH AMENDMENT***

      ***AMENDMENT TO THE UNITED STATES CONSTITUTION***

      ***Plaintiffs Horell, Brown, and Hassan v. City of Pittsburgh***

74.     Plaintiffs incorporates by reference paragraphs 1 through 73 as if more fully set forth herein.

75.     Defendant City of Pittsburgh's conduct, as previously described, was the direct and proximate cause of violations of Plaintiff's First Amendment Rights to freedom of speech and freedom to peaceably assemble.

76.     As a direct and proximate result of Defendant's conduct, as outlined above, Plaintiff suffered physical injury and or emotional and psychological pain and suffering.

WHEREFORE, Plaintiffs ask for the entrance of judgment against the individual Defendants, individually and jointly, as follows:

      a.     compensatory damages in an amount to be determined by this Court to be just, fair and reasonable;

      b.     punitive damages;

      c.     prejudgment and post judgment interest;

      d.     the costs incurred in the prosecution of this matter;

      e.     reasonable counsel fees; and,

      f.     such other and further relief as the Court deems just and appropriate.

E.   *COUNT V VIOLATION OF THE FOURTH AND/OR FOURTEENTH*

     *AMENDMENT TO THE UNITED STATES CONSTITUTION EXCESSIVE FORCE*

     ***Plaintiffs Horell, Brown, and Hassan v. City of Pittsburgh***

77.   Plaintiffs incorporate by reference paragraphs 1 through 76 as if fully set forth herein.

78.   Defendant City of Pittsburgh's conduct, as previously described, was the direct and proximate cause of violation of Plaintiff's Fourth Amendment Rights to freedom from excessive force.

79.   As a direct and proximate result of the Defendants' conduct, Plaintiff suffered physical injury and/or emotional and psychological pain and suffering.

WHEREFORE, Plaintiffs ask for the entrance of judgment against the individual Defendants, individually and jointly, as follows:

  a.   compensatory damages in an amount to be determined by this Court to be just, fair and reasonable;

  b.   punitive damages;

  c.   prejudgment and post judgment interest;

  d.   the costs incurred in the prosecution of this matter;

  e.   reasonable counsel fees; and,

  f.   such other and further relief as the Court deems just and appropriate.

F.    ***COUNT VI VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION EXCESSIVE FORCE***

***Plaintiffs Horell, Brown, and Hassan v. Individual Defendants***

80.    Plaintiffs incorporate by reference paragraphs 1 through 79 as if fully set forth herein.

81.    Defendants' actions as previously described, violated Plaintiffs' right to be free from the use of excessive force.

82.    As a direct and proximate result of the Defendants' conduct, the Plaintiff suffered physical injury and/or emotional and psychological pain and suffering.

WHEREFORE, Plaintiffs ask for the entrance of judgment against the individual Defendants, individually and jointly, as follows:

a.    compensatory damages in an amount to be determined by this Court to be just, fair and reasonable;

b.    punitive damages;

c.    prejudgment and post judgment interest;

d.    the costs incurred in the prosecution of this matter;

e.    reasonable counsel fees; and,

f.    such other and further relief as the Court deems just and appropriate.

**G.** ***COUNT VII VIOLATION OF THE FOURTH AND/OR FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION UNLAWFUL ARREST***

***Plaintiffs Horell and Brown v. City of Pittsburgh***

83.     Plaintiffs incorporate by reference paragraphs 1 through 82 as if fully set forth herein.

84.     Defendant City of Pittsburgh's conduct, as previously described, was the direct and proximate cause of violations of Plaintiffs Horell and Brown's Fourth Amendment Rights to be free from false arrest(s) and malicious prosecution(s).

85.     As a direct and proximate result of Defendants' conduct, as previously described, Plaintiffs Horell and Brown suffered physical injury and/or emotional and psychological pain and suffering.

WHEREFORE, Plaintiffs ask for the entrance of judgment against the individual Defendants, individually and jointly, as follows:

a.     compensatory damages in an amount to be determined by this Court to be just, fair and reasonable;

b.     punitive damages;

c.     prejudgment and post judgment interest;

d.     the costs incurred in the prosecution of this matter;

e.     reasonable counsel fees; and,

f.     such other and further relief as the Court deems just and appropriate.

**H.      COUNT VIII FAILURE TO TRAIN IN VIOLATION OF 42 U.S.C. §1983**

**Plaintiffs Horell, Brown, and Hassan v. City of Pittsburgh**

86.      Plaintiffs incorporates by reference paragraphs 1 through 88 as if more fully set forth herein.

87.      Prior to May 30, 2020, the City of Pittsburgh Bureau of Police "PBP," knew or should have known that it was woefully underprepared in:

　　　　(a) designating peaceful gatherings as "unlawful,"

　　　　(b) designating peaceful gatherings as "lawful,"

　　　　(c) handling the forced dispersal of protests in a reasonable and safe manner;

　　　　(d)creating an educational circular to be used in training officers in the proper and reasonable exercise of force when deadly force is NOT required, as in the the peaceful exercise of citizens' First Amendment rights guaranteed under the United States Constitution.

88.      Defendants were acting under color of law and acting pursuant to customs, practices and policies of the City of Pittsburgh and the PBP in regards to, among others, the use of less lethal force and identifying and dispersing unlawful assemblies.

25

I.      *COUNT IX MUNICIPAL LIABILITY- UNCONSTITUTIONAL CUSTOM IN VIOLATION OF 42 U.S.C. §1983*

*Plaintiffs Horell, Brown, and Hassan v. City of Pittsburgh*

89.     Plaintiffs incorporates by reference paragraphs 1 through 88 as if more fully set forth herein.

90.      Plaintiffs Horell, Brown, and Hassan was deprived of rights and privileges secured to him by the United States Constitution and by other laws of the United States, by the City of Pittsburgh's failure to provide proper training, adequate supervision or discipline in dealing with individuals such as the Plaintiffs in violation of 42 U.S.C. §1983 and related provisions of federal law and in violation of the above cited constitutional provisions.

91.     With respect to the claims made the basis of this lawsuit, the City of Pittsburgh failed to adequately train its officers on how to safely and reasonably implement less than deadly force. The failure to train its officers regarding less than deadly force likewise will cause officers to turn to deadly force in all situations, which reflects a deliberate indifference of the City of Pittsburgh to the rights of the City's inhabitants and is actionable under 42 U.S.C. § 1983.

92.     Plaintiffs would show that Defendants McDonald, Conner, Lerza, and Kovach were the result of, or within the scope of, wrongful and reckless customs, policies, practices and/ or procedures for which the City of Pittsburgh or should have known but never provided the requisite and proper training.

93.     For instance, the following conduct, policies, and customs, *inter alia*, by

Defendants violated Plaintiff Horell, Brown, and Hassan's constitutional rights:

a. the City of Pittsburgh and PBP's failure to adequately train, supervise or discipline its officers who commit a wrongful act or attempt to cover-up a wrongful act of a fellow officer;

b. the City of Pittsburgh and PBP's failure to develop or implement a policy regarding the proper designation of assemblies as "unlawful," and the forced dispersal of protests;  policy on the proper use of less than deadly force;

c. Defendants' inadequate training on how to safely and reasonably use less lethal measures;

d. the City of Pittsburgh and PBP's failure to develop or implement a policy regarding the proper use of chemical gas, flashbang grenades, and/or smoke bombs; and

e. the City of Pittsburgh and PBP's failure to discipline any officer involved in the incidents involving the Plaintiffs despite violating numerous General Orders including firing projectiles at citizens from a close range, aiming at vulnerable areas on their "targets."

94.     In addition, Defendant City of Pittsburgh and/or PBP failed and refused to implement customs, policies, practices or procedures, and failed to train its personnel adequately on the appropriate policies, practices or procedures regarding the proper use of force, deadly force, and less lethal measures and/or how to properly identify "unlawful" assemblies and forced dispersal of protests.  In so doing, Defendant City of Pittsburgh knew that it was acting against the clear dictates of current law, and knew that as a direct consequence of their deliberate decisions, the very situation that occurred in all reasonable probability would occur.

95.     The City of Pittsburgh's failure to properly train and discipline its officers were the proximate cause of the violations of the Plaintiffs' constitutional rights.

27

WHEREFORE, Plaintiffs ask for the entrance of judgment against the Defendants, individually and jointly, as follows:

      a.      compensatory damages in an amount to be determined by this Court to be just, fair and reasonable;

      b.      punitive damages;

      c.      prejudgment and post judgment interest;

      d.      the costs incurred in the prosecution of this matter;

      e.      reasonable counsel fees; and,

      f.      such other and further relief as the Court deems just and appropriate.

**J.**    ***COUNT X MUNICIPAL LIABILITY-UNCONSTITUTIONAL POLICY IN VIOLATION OF 42 U.S.C. §1983***

    ***Plaintiffs Horell, Brown, and Hassan v. City of Pittsburgh***

96.    Plaintiffs incorporates by reference paragraphs 1 through 97 as if more fully set forth herein.

97.    On and for some time prior May 20, 2020 (and continuing to the present date) Defendant City of Pittsburgh deprived the Plaintiffs named herein of the rights and liberties secured to them by the Fourth and Fourteenth Amendments to the United States Constitution, in that said defendant and its supervising, and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, of the Plaintiffs named herein, and of persons in his class,

situation and comparable position in particular, knowingly maintained, enforced and applied an official policy recognized by the City of Pittsburgh and Pittsburgh Bureau of Police.

98.     All individual Defendants acted under color of law.

99.     Defendants acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the Defendant City of Pittsburgh.

100.     Defendants City of Pittsburgh together with the policymakers, maintained, inter alia, the following unconstitutional customs, practices, and policies:

    a.   Employing and retaining as Officers and other personnel, who Defendant City of Pittsburgh, at all times material herein, knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written Pittsburgh Police Department policies and for using excessive force;

    b.   Inadequately supervising, training, controlling, assigning and disciplining Pittsburgh police officers and other Pittsburgh Police Department personnel, including officers, who Defendant City of Pittsburgh knew, or in the exercise of reasonable care, should have known had the aforementioned propensities and character traits.

    c.   Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by all officers, who are City of Pittsburgh Police Department officers.

    d.   Failing to adequately discipline City of Pittsburgh Officers for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

    e.   Refusing to discipline, terminate, or retrain the officers involved, even where shootings were determined in court to be unconstitutional;

    f.   Encouraging, accommodating, or facilitating a "blue code of silence," "blue

29

shield," "blue wall," "blue curtain," "blue veil," or simple "code of silence," pursuant to which deputies do not report other deputies' errors, misconduct or crimes.  Pursuant to this code of silence, if questioned about an incident of misconduct involving another deputy, while following the code, the deputy being questioned will claim ignorance of the other deputies' wrongdoing;

g.   Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police shootings, including failing to discipline, retrain, investigate, terminate, and recommend criminal prosecution for those who participate in shootings of unarmed people.

h.   Having and maintaining an unconstitutional custom and practice of using excessive force and covering up police misconduct. These customs and practices by the City of Pittsburgh were condoned by said defendants in deliberate indifference to the safety and rights of its civilians, including Plaintiffs named herein.

101.   By reason of the aforementioned policies and practices of Defendants, Plaintiffs experienced severe pain and suffering, for which they are entitled to recover damages.   The aforementioned acts and omissions also caused decedent's pain and suffering, loss of enjoyment of life.

102.   Defendant City of Pittsburgh, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the different policies, practices, and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions ratified such policies.  Said defendants also acted with deliberate indifference to both the foreseeable effects

and consequences of these policies and to the constitutional rights of Plaintiffs, and other individuals similarly situated.

103.    By perpetuating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendant City of Pittsburgh, acted with an international, reckless, callous disregard for the well-being of decedent and his constitutional as well as human rights. Defendant City of Pittsburgh, and each of its actions were willful, wanton, oppressive malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

104.    Furthermore, the policies, practices, and customs implemented, maintained and still tolerated by Defendant City of Pittsburgh, were affirmatively linked to, and were a significantly influential force behind, the Plaintiffs' injuries.

WHEREFORE, Plaintiffs ask for the entrance of judgment against the Defendants, individually and jointly, as follows:

a.    compensatory damages in an amount to be determined by this Court to be just, fair and reasonable;

b.    punitive damages;

c.    prejudgment and post judgment interest;

d.    the costs incurred in the prosecution of this matter;

e.    reasonable counsel fees; and,

f.    such other and further relief as the Court deems just and appropriate.

31

K.     ***XI CAUSE OF ACTION FOURTH AMENDMENT DENIAL OF MEDICAL CARE IN VIOLATION OF 42 U.S.C. §1983***

***Plaintiffs Horell, Brown, and Hassan v. Individual Defendants***

105.    Plaintiffs incorporates by reference paragraphs 1 through 104 as if more fully set forth herein.

106.    Defendants acted under color of law.

107.    The denial of medical care by Defendants deprived Plaintiffs Horell, Brown, and Hassan of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Decedent under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

108.    Defendants knew of the risk of harm that he was enhancing by failing to provide medical treatment and/or by delaying such treatment.

109.    Defendants delay in providing medical treatment reflects deliberate indifference and reckless and conscious disregard for the obvious risk that made the violations of Plaintiffs' constitutional rights, a reasonable probability.

110.    As a proximate result of Defendants' conduct,   Plaintiffs Horell, Brown, and Hassan suffered injuries and damages as set forth herein, including great physical pain and emotional distress up to the time of his death, loss of enjoyment of life, and loss of earning capacity.

WHEREFORE, Plaintiffs ask for the entrance of judgment against the Defendants, individually and jointly, as follows:

    a.    compensatory damages in an amount to be determined by this Court to be just, fair and reasonable;

    b.    punitive damages;

    c.    prejudgment and post judgment interest;

    d.    the costs incurred in the prosecution of this matter;

    e.    reasonable counsel fees; and,

    f.    such other and further relief as the Court deems just and appropriate.

## **TRIAL BY JURY**

112.    Plaintiffs haves paid a jury fee and demands trial by jury.

## **PRAYER**

WHEREFORE, Plaintiffs pray judgment against Defendants and each of them as follows: AS TO EACH CLAIM FOR RELIEF AS APPLICABLE.

1. For General and Special Damages, including both survival and wrongful death damages, according to proof;

2. For Exemplary Damages as provided by law; in an amount to be proved against each individual Defendant;

3. Punitive damages;

4. For Attorney's Fees under U.S.C. 1985 and 1988;

5. For Costs of Suit;

33

6.   For such other and further relief as the Court may deem proper

Respectfully submitted,

By: /s/ *Fred G. Rabner*
Fred G. Rabner, Esquire
PA. ID No. 77337
Rabner Law Offices, P.C.
222 Boulevard of the Allies
Second Floor
Pittsburgh, Pa 15222
(412) 765-2500
(412) 765-3900 Fax.
monte@rabnerlaw.com


By: /s/ *Ashley M. Cagle*
Ashley M. Cagle, Esquire
PA. ID No. 312497
Rabner Law Offices, P.C.
222 Boulevard of the Allies
Pittsburgh, Pa 15222
(412) 765-2500
(412) 765-3900 Fax.

By: /s/ *Monte J. Rabner*
*Monte J. Rabner*, Esquire
PA. ID No. 682151
Rabner Law Offices, P.C.
222 Boulevard of the Allies
Pittsburgh, Pa 15222
(412) 765-2500
(412) 765-3900 Fax.


**ATTORNEYS FOR PLAINTIFFS**

34